IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEAN JERSETT,

                    Petitioner,                   OPINION AND ORDER

     v.                                    3:08-cv-0353-slc

BRADLEY HOMPE, Warden,
Stanley Correctional Institution,

                    Respondent.

---

      Dean Jersett, an inmate at the Stanley Correctional Institution, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He has paid the $5 filing fee.  The petition is before me for preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

OPINION

      Petitioner was convicted in 1994 in the Circuit Court for Douglas County of two counts of having sexual contact with a child under the age of 13.  He was sentenced to concurrent terms of 40 years in prison on each count.  Petitioner contends that his custody resulting from his convictions is in violation of the laws or Constitution of the United States because he was mentally incompetent and was on medications at the time he entered his pleas and because his trial lawyer was ineffective for advising petitioner to withdraw his plea

of not guilty by reason of mental disease or defect.  It appears from the petition that petitioner did not file his federal habeas petition within the one-year limitations period, see 28 U.S.C. § 2244(d), and that he procedurally defaulted his claims by failing to raise them at the proper time in state court.  See Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).  Nonetheless, it is unnecessary to decide whether to dismiss petitioner's claims on procedural grounds because there is no substantive merit to petitioner's claims.  28 U.S.C. § 2254(b).

To be entitled to a writ of habeas corpus, a state prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief, the district court must dismiss the petition.  Rule 4 of the Rules Governing Section 2254 Cases.  Under Rule 4, the district court may dismiss a petition summarily if it determines that the petition "raises a legal theory that is indisputably without merit" or contains factual allegations that are "palpably incredible."  Small v. Endicott, 998 F.2d 411, 414 (7th Cir. 1993).

Petitioner's submissions include several documents from the state court proceedings, including a copy of the transcript of the plea hearing in Douglas County cases 94 CF 163 and 94 CF 182, a copy of the transcript of a postconviction motion hearing held on May 22, 2003, decisions from the state court of appeals and a psychological report dated December 12, 1994 by John Laney, Ph.D.  These documents plainly show that petitioner is not being

held in custody in violation of his constitutional rights.  First, petitioner argues that his low IQ of 83 renders his plea involuntary.  In support of this claim, petitioner cites <u>Tennard v. Dretke</u>, 542 U.S. 274 (2004), but this case does not advance his position.  In <u>Tennard</u>, 542 U.S. at 288, the Supreme Court held that evidence of a defendant's impaired intellectual functioning is mitigating evidence that the jury must be allowed to consider during the penalty phase of a capital case.  <u>Tennard</u> dealt solely with the sentencing phase of a death penalty case; its holding has nothing to do with the plea stage in a non-capital case.

A criminal defendant must be mentally competent at the time he pleads guilty. <u>Godinez v. Moran</u>, 509 U.S. 389, 399 (1993).  The standard governing competency to plead guilty is the same as that used to evaluate competency to stand trial, that is, whether the defendant "has sufficient present  ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him."  <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960). "Not every manifestation of mental illness demonstrates incompetence . . . ; rather, the evidence must indicate a present inability to assist counsel or understand the charges."  <u>United States ex rel. Foster v. DeRobertis</u>, 741 F.2d 1007, 1012 (7th Cir. 1984).  <u>See</u> <u>also</u> <u>Burket v. Angelone</u>, 208 F.3d 172, 192 (4th Cir. 2000) ("[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.").

The exhibits submitted by petitioner refute his suggestion that he was not competent to enter his guilty pleas. Laney, the psychologist who administered the IQ tests and prepared a psychological report, specifically found that petitioner was "considered mentally competent, able to understand the proceedings against him and able to assist in his own defense." Psychological Report, Dec. 12, 1994, Attachment I to Petition, at 5. This assessment was seconded by petitioner's lawyer, who stated at the plea hearing that he had had numerous conversations with petitioner about the consequences of withdrawing his plea of not guilty by reason of mental defect in exchange for a guilty plea, including the potential for future civil commitment under Wisconsin's sexual predator law, Wis. Stat. Chapter 980. Tr. of Plea, Hearing, Jan. 20, 1995, Attachment G to Petition, at 12-13. Counsel stated that he was "confident" that petitioner understood all of these matters, noting that petitioner had "asked the appropriate questions which would indicate to me that he does understand what we've discussed." Id. The prosecutor also remarked that from his perspective, petitioner was "clearly aware of what has been happening during the various proceedings and especially today." Id., at 21. In the face of this evidence, the mere fact that petitioner is of borderline intelligence is insufficient to raise a bona fide doubt as to his competence to plead guilty.

Petitioner also contends that he did not understand the plea proceedings because of the medications he was taking. The record indicates that petitioner was taking a daily dose of 20 milligrams of Prozac and 25 milligrams of Amitriptyline. These are not "powerful psychotropic drugs" like those the defendant was taking in Burt v. Uchtman, 422 F.3d 557,

565-566 (7th Cir. 2005) (defendant's daily medication regime included 100 milligrams of Mellaril, 20 milligrams of Valium and 150 milligrams of Tofranil), but rather are relatively mild antidepressants. Petitioner was taking these same medications at the same dosages when he was evaluated by Laney, but Laney detected no adverse effects from the medications. Further, petitioner indicated both in court and on his guilty plea questionnaire that his use of medications did not interfere with his ability to understand the court proceedings, and he did not say or do anything that suggested to the contrary. Cf. Burt, 422 F.3d at 566 (petitioner's lawyers asked for continuance because petitioner had difficulty staying awake during jury selection). His assertion that his medications prevented him from understanding the plea proceeding is patently frivolous.

Finally, petitioner contends that his lawyer provided ineffective assistance when he advised petitioner to withdraw his plea of not guilty by reason of mental disease or defect. As evidence to support the viability of an NGI defense, petitioner points to Laney's report, wherein he concluded that because of his mental disease (pedophilia), petitioner had been unable to conform his conduct to the requirements of law.

A criminal defendant has a Sixth Amendment right to be represented by effective counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to establish that he was denied the effective assistance of counsel, a defendant must show both that counsel's performance was deficient and that he was prejudiced by his attorneys' errors. Id. at 687. Petitioner focuses on the prejudice prong. He argues that if his lawyer not abandoned the

NGI defense, the outcome of his case would likely have been different.  However, petitioner must also show that his lawyer's performance was deficient.  To do this, he must overcome the "strong presumption" that defense counsel's conduct was "within the wide range of reasonable professional assistance; that is . . .  that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. at 689 (internal quotation omitted).

The record makes clear that counsel's recommendation to abandon the NGI defense was a strategic decision made upon consideration of several factors.  At the plea hearing, counsel stated:

> Your Honor, I have had numerous discussions with Mr. Jersett regarding [withdrawing the not guilty by reason of mental disease or defect] plea.  We've discussed [Laney's] report extensively.  I think he also understands that in spite of the report we've discussed the difficulties in, number one, convincing the jury that the defense is appropriate and, in fact, we've discussed the possibility of waiving a jury and convincing the Court that Mr. Jersett is not responsible in light of the report of Dr. Laney.
>
> In discussions with Mr. Jersett, we've decided that and we'll be requesting at the end of our plea today that this matter be set, when it's set for sentencing, for an adequate time.  We've discussed that the best way to proceed -- we've decided that the best way to proceed is to waive that defense but to present evidence from Dr. Laney at sentencing in the hopes that Mr. Jersett will receive perhaps a sentence that will allow him to seek the treatment that he's very open to receive and we believe is appropriate.  Although Mr. Jersett understands that he's looking at some prison time in these matters and I believe he understands what the maximum is that he could receive, he's also open to treatment and is hopeful that treatment would be available within the prison system for him.

Tr. of Plea Hearing, Jan. 20, 1995, Attachment G to Petition, at 17.  In response to questioning by the court, petitioner indicated that he agreed with what his lawyer had said. Id. at 18.

Petitioner has submitted no evidence or made any argument to overcome the presumption that counsel's recommendation to abandon an NGI defense was a reasonable strategy under the circumstances.  Counsel articulated rational reasons, made after a thorough investigation of the law and the facts, why he decided it was in petitioner's best interest to withdraw his NGI plea.  As the Court made clear in Strickland, 466 U.S. at 690, such choices are "virtually unchallengeable."  "There are countless ways to provide effective assistance in any given case," id. at 689, and here, petitioner falls short of showing that the way his lawyer chose to approach his case was unreasonable.  As counsel recognized, neither the jury nor the court was required to accept Laney's conclusion regarding petitioner's inability to conform his conduct to the requirements of the law even if the state presented no evidence to rebut it.  Schultz v. State, 87 Wis. 2d 167, 173, 274 N.W. 2d 614 (1979). Further, counsel's comments indicate that petitioner preferred to seek treatment in prison rather than receive treatment in a mental institution, which is where he would be confined if he were found not guilty by reason of mental disease or defect.  Wis. Stat. § 971.17(1)(a). Finally, it bears noting that a finding by the jury or the court that petitioner was *not* able to control himself would support an inference of dangerousness in the event the state later decided to file a petition under Chapter 980.  Wis. Stat. § 980.01(7) (defining "sexually

7

violent person" in part as person "who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence").  Given these legitimate reasons for declining to pursue an NGI defense, the court will not second-guess counsel's decision.

In sum, the petition and the attached exhibits plainly show that petitioner is not in custody in violation of his constitutional rights.  Accordingly, the petition must be dismissed.


ORDER

IT IS ORDERED that the petition of Dean Jersett for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED WITH PREJUDICE pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

Entered this 2d day of July, 2008.

BY THE COURT:

*Barbara B. Crabb*

_____
BARBARA B. CRABB
District Judge

8